### JUNKINS v. JUNKINS.

(Supreme Court, Appellate Division, Second Department. May 29, 1912.)

1. APPEAL AND ERROR (§ 1011*)—REVIEW—FINDINGS OF TRIAL COURT.

    A finding by the trial court based on conflicting evidence will not be reviewed on appeal when not against the weight of the evidence.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

2. APPEAL AND ERROR (§ 1054*)—REVIEW—HARMLESS ERROR.

    Where there was sufficient competent evidence in an action by a wife for separation and alimony to sustain a finding in her favor, the admission of hearsay evidence, tending to show that her husband had informed his friends that she was mentally incompetent and a finding of that fact based thereon, is harmless, though erroneous.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

    Woodward, J., dissenting.

Appeal from Special Term, Westchester County.

Action by Suna Harris Junkins against Sydney E. Junkins. From a judgment for plaintiff and an order awarding temporary alimony, defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Arthur J. Baldwin, of New York City (William L. Marshall, on the brief), for appellant.

William H. Hamilton, of New York City (Norman C. Conklin, on the brief), for respondent.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 55 Hun, 606.

PER CURIAM. This is an appeal from a final judgment in an action for a separation, brought by the plaintiff wife against the defendant husband. The case was tried in Westchester county, and decided in favor of the plaintiff.

[1] The record before us is quite voluminous, as are likewise the briefs. The case was argued by the respective counsel at great length and with great earnestness. A reading of the long record discloses the fact that there is involved in this appeal practically only a question of fact. The parties are well on in middle age, and had been married to each other for about 10 years before the beginning of this action. Each of them had been previously married to other spouses, and divorced. The plaintiff had secured in another state a divorce from her first husband for his habitual drunkenness. The defendant had been divorced from his first wife for infidelity. The plaintiff had no children by her former marriage, and none by her marriage with this defendant. The defendant had two children by his former marriage, and none by this plaintiff. The plaintiff started life humbly as a manicurist, which work she was doing when the defendant met her and married her. The defendant was then in the employment of one of the great electrical concerns in a minor capacity. The two together started their new matrimonial alliance under fairly favorable circumstances. The first year was a happy one, apparently. Then, according to the plaintiff's story, the defendant began to show a spirit of fault-finding and harsh criticism, accompanied by profanity and violent language to the plaintiff. The plaintiff's story attempts to make out a case of progressive misbehavior on the part of the defendant to the plaintiff, shown in acts of physical violence, recurring fits of bad temper, and abusive language.

No one can read the case without reaching the conviction that the plaintiff and the defendant did not give and take as much as their marital relations should require. She was a nervous, high-strung woman, who had become deaf in one ear as a result of some physical disorder, which was attributed by her to a violent attack made upon her by the defendant. Towards the end of the marital union, she had reached that period of life in which women are generally subject to great sensitiveness, and, in many cases, to severe nervous disarrangement. During their married life the defendant had grown quite prosperous. He had progressed from his minor grade of employment to a place practically at the head of one of the greatest electrical corporations in this country. His income had increased very largely, and their habits of life had changed accordingly. One of his children by the former marriage, a son, was about to graduate from college, while the other child, a daughter, was attending and about to graduate from another college. Naturally enough, he had the desire to bring his daughter under his own home influence, and likewise to give a more substantial recognition to his son, both of whom he had previously supported and educated. The plaintiff, however, had no desire to have these children of the former marriage come into her household life. From this state of mind on the part of both parties to this action arose the real motive and the desire of the plaintiff for a separation from the

defendant. Nothing will be gained by particularizing the violent acts of the defendant towards the plaintiff, as found by the trial court. The testimony advanced by both parties to the action was necessarily confined very largely to their own statements, together with incidental corroboration thereof by the testimony of servants in the household. The trial court gave credence to the plaintiff's story. He had the advantage of having the witnesses before him, and of weighing their testimony by their manner of giving it, and by all the other general incidents which go to stamp a story as true or false in the mind of him who hears it. This privilege we have not, and a careful reading of the various stories as they appear in the printed record does not disclose that the finding of the trial court was against the weight of evidence. We cannot say that the trial court erred in deciding as to whom credibility should be given, nor do we find in the record such inherent inconsistencies on the part of the witnesses whom the court did believe as to justify us in arriving at a different conclusion as to who should be believed.

[2] The appellant, however, complains of the admission of incompetent testimony on behalf of the plaintiff, offered to prove cruel treatment of the plaintiff by the defendant, in that he described her to friends and neighbors as being mentally incompetent. The trial court had found this fact according to the evidence complained of. This testimony, as appears at folios 1522 to 1524 of the record on appeal, was clearly incompetent, because it was nothing more than hearsay. It is unintelligible to us why counsel of experience should persist in asking such questions after a proper objection, nor is it any more intelligible why the learned trial court permitted this course of action. At the same time, if we should eliminate this evidence entirely from the record, and likewise eliminate the finding of fact made by the trial court, which may be said to rest entirely or partly upon this evidence, then we should not for that reason alone reverse this judgment, because neither this evidence nor the findings based upon it, in whole or in part, were essential to the cause of action pleaded by the plaintiff and found by the court upon her testimony. In other words, the findings of the trial court, as to repeated acts of physical violence and abusive language, were sufficient themselves to sustain this judgment.

This appeal brings up likewise the interlocutory order granting alimony and a counsel fee pending the trial of the action.

On this record, we are of opinion that both the interlocutory order and the final judgment should be affirmed, with costs.

JENKS, P. J., and BURR, THOMAS, and CARR, JJ., concur. WOODWARD, J., dissents upon the ground that the decision is against the clear weight of the evidence.